

September 21, 2020

**VIA E-FILING**
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street, Unit 14, Room 6100
Wilmington, DE 19801-3555

      Re:   *Rio Tinto Alcan International Ltd., et al. v. Century Aluminum Co., et al.*,
            <u>C.A. No. 19-829-CFC-SRF</u>

Dear Judge Fallon:

Recent events triggered Century's duty to supplement its invalidity contentions: (1) claim construction briefing; (2) the parties' dispute over Rio Tinto's definition of "Accused Products;" and (3) Rio Tinto's responses to Century's Third Set of Interrogatories. On August 21, 2020, Century promptly notified Rio Tinto that it seeks to add the invalidity contentions identified below. The parties met and conferred on August 24, 2020, at which time Rio Tinto stated it would not oppose Century's Motion to add the indefiniteness issues but would oppose the remainder of this Motion. Ex. 1. Accordingly, consistent with paragraph 7 of the Scheduling Order, D.I. 22, Century requests leave to amend its invalidity contentions. Century's proposed supplemental contentions in clean and redline are attached as Exs. 2 and 3, respectively.

**I.    RELEVANT FACTS**

The claim construction process precipitated the need for Century to add contentions that three claim terms,[1] (the "Section 112 claim terms") result in patent invalidity under pre-AIA 35 U.S.C. 112 ¶¶1-2. When the parties first exchanged proposed constructions for disputed claim terms on May 6, 2020, Rio Tinto proposed construing all terms in accordance with their plain and ordinary meaning. D.I. 83. Then, in response to Century's proposed constructions that the Section 112 claim terms are indefinite, Rio Tinto changed course to propose constructions and make arguments that necessitate the proposed amendments. The parties finished exchanging claim construction briefs on August 19, 2020 and filed a joint claim construction brief on August 26th.

Rio Tinto's proposed definition of "Accused Products," coupled with its *Markman* positions and responses to Century's Third Set of Interrogatories, sparked the need for Century to revise its contentions to add prior art that renders the Asserted Patents invalid. Specifically, Rio Tinto proposed that "Accused Products" include:

> (1) any version of Alloy 31104, (2) any version of Alloy AA3012A, (3) any aluminum alloy that You have ever identified as Alloy 31104 or AA3012A, (4) any alloy made pursuant to instructions or a recipe for Alloy 31104 or AA3012A, (5) any alloy intended to be equivalent to Alloy 31104 or AA3012A, (6) any alloy that has a chemical composition within commercially acceptable range of the composition of Alloy 31104 as set forth in BIS-2018-0002-4060 (a copy of which is attached hereto as Exhibit A), (7) any alloy that could meet the chemical

---

[1] These claim terms are "good self corrosion protection" and "incidental impurities" in the '071 patent and "consisting essentially of" in the '748 patent.

composition limitations set forth in the Patents-in-Suit, or (8) any alloy that could be a substitute for Alloy 31104 or AA3012A in any capacity.

Ex. 4.[2] Rio Tinto's definition includes aluminum alloy 3012A, which is admitted prior art, and sweeps within its scope another prior art alloy known as 31101, which has the ***exact same*** chemical composition as 31104. If the definition of Accused Products is as broad as Rio Tinto demands, the Asserted Patents are invalid over 31101 and 3012A, both of which are Rio Tinto's own prior art alloys. "That which infringes, if later, would anticipate, if earlier." *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889).

Rio Tinto's responses to Century's Third Set of Interrogatories, served just one day before Century moved for a discovery conference regarding amending its invalidity contentions, confirm that 31101 is also prior art. In response to Century's Interrogatory asking Rio Tinto to "[d]escribe with full particularity Rio Tinto alloy 31101, including . . . dates of first sale and public accessibility [and] its conception and reduction to practice," Rio Tinto confirmed that 31101 was developed and tested in 2001, which pre-dates both Asserted Patents. Ex. 5 (Response to ROG 12).

## II. ANALYSIS

This Court analyzes a motion to supplement contentions pursuant to Fed. R. Civ. P. 16, requiring "good cause," and an analysis of the *Pennypack* factors. *In re ChanBond, LLC Patent Litig.*, No. 15-CV-842, 2019 WL 2098316 at *2 (D. Del. May 14, 2019) ("*ChanBond*"). "[T]he exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Id*. (citations and quotations omitted). For the reasons that follow, exclusion of Century's supplemental invalidity contentions is not warranted.

### A. Century Shows Good Cause Under Rule 16

Rule 16(b)(4) provides that: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When considering the matter of "good cause" under Rule 16, courts in the Third Circuit focus on a showing of diligence on the part of the moving party. *See, e.g.*, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010).

Century has been diligent in seeking to amend its contentions that the Section 112 claim terms are indefinite, not enabled and not adequately described because Century notified Rio Tinto of its intent to add the Section 112 contentions shortly after the parties finalized exchanging *Markman* briefs and before filing the Joint *Markman* Brief, when it became clear that Rio Tinto's claim construction ran afoul of Section 112. Notably, Rio Tinto does not oppose Century adding indefiniteness, which was specifically briefed, to its contentions. But the invalidity of these claim terms pursuant to Section 112 ¶1 likewise depends upon how the claims are construed.[3] Rio

---

[2] Rio Tinto since proposed to limit its definition of "Accused Products" to just prong 7, but that does not change the fact that Rio Tinto included admitted prior art in its original definition.

[3] Written description turns on whether the disclosures of the patent demonstrate that the inventor invented what is claimed and enablement turns on whether the specification teaches how to make and use what is claimed without undue experimentation.

Tinto's positions as to claim construction were not made apparent until the Markman briefing and, if the Court were to adopt a construction for the Section 112 terms that is different from or adverse to Century's proposed construction, then the claims of the Asserted Patents are invalid under Section 112 ¶1. It bears noting that several courts having local patent rules pertaining to amendment of invalidity contentions provide that one example of circumstances that may support a finding of good cause includes "a claim construction by the Court different from that proposed by the party seeking amendment." *See, e.g.,* D.N.J. Local Patent Rule 3-7(a); N.D. Cal. Local Patent Rule 3-6(a). Century's diligence is further underscored in that it is not waiting until after a *Markman* ruling to supplement its contentions.

As one example regarding how Rio Tinto's constructions sparked the need for Century to amend its contentions, Rio Tinto construed "consisting essentially of" as "includ[ing] the listed elements and is open to unlisted elements that do not materially affect the basic and novel characteristics of the invention," but the patent provides no disclosure that the alleged invention actually includes the listed elements or what may materially affect them, and it therefore lacks written description and enablement. D.I. 114, pp. 28-48. As another example, Rio Tinto proposed complex constructions for "incidental impurities" and "good self corrosion protection," claiming that Rio Tinto acted as its own lexicographer. *Id.*, pp. 78-79, 85. In response, Century pointed out that Rio Tinto's proposed constructions are not to be found anywhere in the specification, nor did Rio Tinto point to anything to support its constructions. *Id.* pp. 80-82, 88-89. Then, in reply, Rio Tinto backed away from its position that it acted as its own lexicographer and proposed alternative reasons for its constructions that again are not supported or taught by the specification. *Id.* 83-84, 89-90. Rio Tinto's ever wavering constructions opened the door to Century's amended invalidity contentions.

Century also acted diligently to supplement its contentions with prior art alloys 31101 and 3012A. That these alloys are prior art became apparent when the parties met and conferred regarding the breadth of Rio Tinto's definition of "Accused Products," when Rio Tinto confirmed its position that "Accused Products" includes 31101 and 3012A. Specifically, Rio Tinto's original definition of "Accused Products" expressly included 3012A, which one of the Asserted Patents acknowledges is prior art. D.I. 12-1, 1:23-51. Moreover, it was only when Rio Tinto responded to Century's Interrogatory No. 12 on August 24, 2020 that Century first became aware that 31101 predated the priority dates of both Asserted Patents. Century notified Rio Tinto of its intent to amend its invalidity contentions to include 3012A and 31104 and moved for a discovery conference regarding the amended contentions just two weeks after the parties reached an impasse regarding its definition of "Accused Products" and just one day after Century received Rio Tinto's response to Interrogatory No. 12, which is when 31101 first materialized as prior art.

Century's amendments are timely under the Scheduling Order in this case, D.I. 22, which provides that "[n]on-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include (a) recent discovery of material prior art despite earlier diligent search." That 31101 pre-dates the Asserted Patents was only discovered by Century the day before it filed its motion for a discovery conference.

### III.    The *Pennypack* Factors Do No Warrant Exclusion

Exclusion under the *Pennypack* factors requires consideration of (1) the prejudice or surprise to Rio Tinto; (2) the possibility to cure the prejudice; (3) the likelihood of disruption to the trial schedule; (4) bad faith or willfulness involved in failing to disclose the evidence; and (5) the importance of the evidence withheld.  *ChanBond* at *2.

*First*, Rio Tinto is not prejudiced because there is ample time in the schedule for Rio Tinto to address the supplemental contentions. Fact discovery does not close until November 18th and expert discovery has not begun. To date, no depositions are scheduled. The *Markman* hearing does not take place until October 23rd. Trial is over a year from now. Thus, as this case is sufficiently in the early stages, Rio Tinto has more than sufficient time to address the supplemental contentions. Further, Rio Tinto cannot be surprised by the supplemental contentions because the Section 112 issues were vetted during the *Markman* briefing and the two prior art alloys are Rio Tinto's own alloys. Moreover, Rio Tinto includes 3012A its definition of "Accused Products" and Rio Tinto concedes 31101 shares the same chemical composition of its own 31104.

*Second*, Rio Tinto has every opportunity to cure any prejudice because, in addition to the case being in the relatively early stages, Rio Tinto has not meaningfully responded to Century's discovery related to its contentions. For example, in response to an interrogatory asking Rio Tinto to explain its reasons why the Asserted Patents are not invalid for the reasons laid out in Century's invalidity contentions, Rio Tinto stated that it would respond over the course of expert discovery, which has not yet begun. (Ex. 5, pp. 10-11.) Rio Tinto provided the same boilerplate response to an interrogatory regarding whether alloy 31104, is an improvement over prior art alloys 3012A and 31101. *Id.*, pp. 9-10. *ChanBond* at *2 (granting leave to supplement invalidity contentions in response to new validity theories disclosed even later than here—during expert discovery—where patentee provided similar boilerplate responses during fact discovery).

*Third* and *Fourth*, for reasons similar to all of the above, there will be no disruption to the procedural schedule, including the trial, and Century has not acted in bad faith or willfully delayed the disclosure of evidence. *Broadsoft Inc. v. Callwave Comm'n*, No.13-cv-711, 2015 WL 3542547 *2 (D. Del. June 1, 2015) (denying motion to strike invalidity contentions as untimely because "[t]here is no disruption of the trial schedule, . . . there is nothing in the record to suggest bad faith or wilfulness in not complying with the disclosure rules," and accepting "[defendant's] position that the supplementation was prompt as it was performed within approximately two months' time after [plaintiff] identified their invention dates.").

*Fifth*, the evidence presented in the supplemental contentions is critical to Century's invalidity case as evidenced by the posture of this Motion and in view of Rio Tinto's new definition of Accused Products and new claim construction positions.

### IV.    CONCLUSION

For the foregoing reasons, Century respectfully requests that the Court grant its Motion.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Mail)